[775 NYS2d 42]

In the Matter of the Estate of BLANCHE D. HUNTER, Deceased. CHASE MANHATTAN BANK, Appellant; JUDITH CHINELLO et al., Respondents.

Second Department, March 29, 2004

## APPEARANCES OF COUNSEL

*Harris Beach, LLP*, Pittsford (*Paul J. Yesawich III* and *Gregory J. McDonald* of counsel), and *Ruskin Moscou Faltischek, P.C.*, Uniondale (*C. Raymond Radigan* of counsel), for appellant.

*Williams & Williams*, Rochester (*Mitchell T. Williams* and *Kenneth Joyce* of counsel), for Judith Chinello and others, respondents.

*Eliot Spitzer, Attorney General*, New York City (*William Josephson* and *Robert R. Molica* of counsel), in his statutory capacity pursuant to EPTL 8-1.4 (e) (1) (D) and 8-1.1 (f).

*Sidley Austin Brown & Wood, LLP*, New York City (*Eileen Caulfield Schwab* of counsel), and *Roberta Kotkin*, New York City, for New York Bankers Association, amicus curiae.

## OPINION OF THE COURT

PRUDENTI, P.J.

In this case, the petitioner Chase Manhattan Bank served as (1) an executor of a decedent's estate and (2) a trustee of two separate testamentary trusts established by the decedent. For the sake of simplicity, we may refer to these two trusts as the Eighth (A) Trust and the Eighth (B) Trust.

A decree of the Surrogate's Court dated June 1, 1977 (hereinafter the 1977 decree) discharged the petitioner from future liability in connection with its handling of the estate, and a decree of the same court dated December 10, 1981 (hereinafter the 1981 decree) discharged the petitioner from future liability in connection with its handling of the Eighth (A) Trust. The object-

ant Pamela Townley Creighton,* the income beneficiary of the Eighth (B) Trust, was among those who had a full and fair opportunity to raise any objections either to the petitioner's management of the estate, or to its management of the Eighth (A) Trust, prior to the entry of the two decrees noted above. In the decree now under review, however, the Surrogate held that the objectant was not in all respects bound by those prior decrees (*see Matter of Hunter,* 194 Misc 2d 364 [2002]). We respectfully disagree.

Far from negating application of the doctrine of res judicata, the fact that the petitioner in this case functioned in a multiplicity of roles, or "wore multiple hats," as executor and trustee, is a circumstance that, in light of the provisions of SCPA 2210 (10), warrants the conclusion that the doctrine of res judicata should apply with, if anything, stronger force than usual. It is only by virtue of the provisions of this statute that a beneficiary of a testamentary trust is entitled to formal notice of a proceeding in which the executor of the decedent's estate seeks to be discharged. The doctrine of res judicata cannot logically have less force in the case of a person who actually received formal notice of a fiduciary's application for the judicial settlement of an account, precisely because such application falls within the ambit of SCPA 2210 (10), than in the case of a person who received no such formal notice. We therefore conclude that the 1977 and 1981 decrees noted above are binding on all persons over whom jurisdiction was obtained and who were afforded a full opportunity to litigate the issues embraced in those decrees, including the objectant herein (*see generally Pray v Hegeman,* 98 NY 351, 358 [1885]; *Matter of Ziegler,* 161 Misc 2d 203 [1994], *affd* 213 AD2d 280 [1995]; *Matter of Seaman,* 275 App Div 484 [1949], *affd* 300 NY 756 [1950]; *Matter of Buck,* 267 App Div 328 [1943]; *Matter of Chaves,* 239 App Div 900 [1933], *affg* 143 Misc 868 [1932]; *Matter of Hammond,* 94 Misc 2d 760 [1978]; *Krimsky v Lombardi,* 78 Misc 2d 685 [1974], *affd* 51 AD2d 600 [1976]; *Matter of Sutro,* 71 Misc 2d 996 [1972]; *Matter of Malkoski,* 48 Misc 2d 98 [1965], *affd* 28 AD2d 826 [1967]).

Blanche D. Hunter died in December 1972. Paragraph "EIGHTH A" of her will provided for the establishment of the

---

* Pamela Townley Creighton died on December 3, 2002. Judith Chinello and Stan Mandell, the administrators c.t.a of her estate, as well as Margaret Hunter and Pomona College, the appointees of the trust corpus, have been substituted as the objectants herein. For the sake of clarity, however, this opinion will refer to Pamela Townley Creighton as the objectant.

Eighth (A) Trust for the benefit of her granddaughter Alice F. Creighton. Paragraph "EIGHTH B" provided for the establishment of the Eighth (B) Trust for the benefit of another granddaughter, the objectant Pamela Townley Creighton. Each of the trusts provided that, in the event that the granddaughter/beneficiary were to die without issue, and without having exercised a power of appointment, the corpus of the trust would be added to the principal of the other trust. Hunter's will designated a predecessor of the petitioner as one coexecutor, and James W. Cook as the other coexecutor. The petitioner's predecessor and Cook were also named as cotrustees of the two trusts noted above.

The decedent's will was admitted to probate in 1973. In 1976 the petitioner's predecessor and Cook commenced a proceeding to judicially settle their account as coexecutors of the estate. The objectant was served with process, appeared by counsel, and filed certain objections not relevant here. In the 1977 decree, the Surrogate's Court settled the account of the petitioner's predecessor and Cook as coexecutors. The 1977 decree directed, in part, that, upon the conditions stated, and subject to a reservation not relevant here, "the said Executors be and hereby are released from all further liability and responsibility as such Executors to all matters embraced in their Account and this Decree."

Alice died in 1980. The petitioner's predecessor and Cook, as cotrustees of the Eighth (A) Trust, filed a petition dated July 31, 1981, seeking a judicial settlement of their accounting as cotrustees of this trust. The objectant executed an instrument in which she waived citation and consented "that a decree be made settling the account of [the petitioner's predecessor] and James W. Cook, as Trustees under 'EIGHTH A' of the will of Blanche D. Hunter, deceased." The Surrogate's Court, in the 1981 decree, finally settled this account. This decree also contained a provision releasing and discharging the cotrustees "from all further liability and responsibility as such Trustees as to all matters embraced in their Account and this Decree."

Cook died in 1996. In November 1997 the petitioner commenced the present proceeding for a judicial settlement of its intermediate account as trustee of the Eighth (B) Trust. This petition covered the 23-year period from the date that the trust was initially funded in 1973 until the time of Cook's death in 1996. After having been relieved of her initial waiver and consent, the objectant herein was permitted to file objections,

including those now under review (*see Matter of Hunter,* 190 Misc 2d 593 [2002]).

In the objections under review in this case, the objectant asserted, in effect, that the petitioner (or its predecessor) acted improperly as executor of the decedent's estate in permitting an unreasonably high percentage of the estate's assets to remain invested in a particularly ill-fated security, that of stock in the Eastman Kodak Company (hereinafter Kodak). The objectant also asserted that the petitioner (or its predecessor) similarly acted improperly as trustee of the Eighth (A) Trust in failing to divest that trust of Kodak stock. There is no doubt that the objectant had every opportunity to assert those very same objections prior to the entry of the 1977 and 1981 decrees noted above. As she acknowledges in her brief, the objectant "could have objected in [the estate accounting] proceeding to the failure of the [petitioner] as executor to diversify the estate assets in 1973."

Despite the fact that the objectant had already had a full and fair opportunity to litigate the issue concerning the petitioner's (or the petitioner's predecessor's) allegedly improvident concentration of estate assets in Kodak stock, and despite the fact that the objectant has already had a full and fair opportunity to litigate the issue concerning the petitioner's (or the petitioner's predecessor's) allegedly improvident concentration of assets belonging to the Eighth (A) Trust in Kodak stock, the Surrogate denied the petitioner's motion to dismiss the objections now under review, and thus permitted the objectant to relitigate these very same issues in connection with the present proceeding for a voluntary intermediate accounting relating to the Eighth (B) Trust. This was error. While the objectant may of course challenge the petitioner's management of the Eighth (B) Trust on whatever ground she sees fit, she may not, in effect, reopen the accounting proceedings pertaining to the Eighth (A) Trust or the estate.

The general rule is that every decree of the Surrogate's Court is conclusive as to all matters embraced therein against every person over whom jurisdiction was obtained (*see Pray v Hegeman,* 98 NY 351, 358 [1885], *supra; Matter of Ziegler,* 161 Misc 2d 203 [1994], *affd* 213 AD2d 280 [1995], *supra; Matter of Seaman, supra; Matter of Campbell,* 267 App Div 783 [1943], *affg In re Campbell's Will,* 38 NYS2d 827 [1942]; *Matter of Chaves, supra; Matter of Hammond, supra; Krimsky v Lombardi, supra; Matter of Sutro, supra; Matter of Malkoski, supra; see also Wal-*

*lace v Ford,* 44 Misc 2d 313 [1964]; *Matter of Van Deusen,* 24 Misc 2d 611 [1960]; *Matter of Jones,* 13 Misc 2d 678 [1958]; *Matter of Payne,* 12 Misc 2d 861 [1958]; *Matter of Crawford,* 207 Misc 145 [1955]; *Matter of Floesch,* 197 Misc 753 [1950]; *Matter of Edwards,* 196 Misc 997 [1949]; *Matter of Slote,* 188 Misc 144 [1946]; *Millard v McFadden,* 185 Misc 771 [1945]; *Matter of Renn,* 181 Misc 976 [1943]; *Matter of Massimino,* 143 Misc 119 [1932]; *Matter of Menzie,* 54 Misc 188 [1907]). This rule had become so embedded in estate and trust practice, and was so widely recognized, that the drafters of the Surrogate's Court Procedure Act saw no need to include a provision similar to that found in former section 274 of the Surrogate's Court Act, which had codified the rule. "It was considered unnecessary to restate this provision in the SCPA because 'it states a self-evident fact, that every decree whether upon an accounting or otherwise is binding upon all persons of whom jurisdiction was obtained' " (*Matter of Ziegler, supra* at 205, quoting Revisers' Notes, McKinney's Cons Laws of NY, Book 58A, SCPA 2226, at 292 [now section 2227]; *see* Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 58A, SCPA 2227, at 269).

The doctrines of res judicata and collateral estoppel have, if anything, expanded in scope in the years that have gone by since the time that many of the cases cited above were decided. New York has adopted the "transactional" approach in deciding res judicata issues (*see O'Brien v City of Syracuse,* 54 NY2d 353 [1981]; *Matter of Reilly v Reid,* 45 NY2d 24 [1978]), recognizing that "considerations of judicial economy as well as fairness to the parties mandate, at some point, an end to litigation" (*Matter of Reilly v Reid, supra* at 28). The Court of Appeals has stated that the doctrine is "strong enough . . . to bar a second action even where further investigation of the law or facts indicates that the controversy has been erroneously decided" (*id.*). The rule has accordingly been recognized that "[u]nder the general precepts of res judicata, an accounting decree is conclusive not only as to issues which were actively presented and determined, but as to those which could have been raised regarding all matters set forth in the accounting" (*Matter of Ziegler, supra* at 204-205, citing Scott, Trusts § 220, at 374; *Matter of Roche,* 259 NY 458 [1932]; *Staples v Mead,* 152 App Div 745 [1912]; *Matter of Crawford, supra; Matter of Van Deusen, supra; Matter of Chapin,* 171 Misc 783 [1939]; *see also Matter of Rudin,* 292 AD2d 283 [2002], *affg* NYLJ, Mar. 2, 2000, at 30, col 2; *Matter of Hofmann,* 287 AD2d 119 [2001]).

Contrary to the determination of the Surrogate, we find that there are no special circumstances that would warrant departure from this rule in this case. That the executor of the estate, the trustee of the Eighth (A) Trust and the trustee of the Eighth (B) Trust were one and the same entity presents a circumstance that is far from unusual. The dual or tripartite capacity of the petitioner, or its predecessor, does not alter the applicability of the basic rule according to which a party who has had a full and fair opportunity to litigate any particular issue in one proceeding should not be permitted to relitigate the very same issue in a subsequent proceeding.

To negate the operation of the doctrine of res judicata in the case at hand is to render meaningless the provisions of SCPA 2210 (10). SCPA 2210 sets forth the categories of persons who must be served with process in connection with a voluntary judicial settlement of the account of a fiduciary. If an executor is seeking a voluntary settlement of his or her account, the general rule is that he or she need not issue process to the beneficiaries of testamentary trusts. Ordinarily, it is not necessary for an accounting executor to serve citations upon any of the trust beneficiaries on the presumption that the interest of the beneficiaries is sufficiently protected by citing the trustee (*see Matter of Ziegler,* 157 Misc 2d 423, 427 [1993]; *Matter of Levy,* 130 Misc 2d 370, 373 [1985]; *Matter of Miles,* 31 Misc 2d 464 [1961]).

The case is decidedly different where a fiduciary is accounting to himself or herself. SCPA 2210 (10) states, in part, "[w]here an accounting fiduciary accounts to himself in a separate capacity as [a] . . . trustee . . . it shall not be sufficient to issue process to or obtain the appearance of the accounting party in such separate capacity only, but in addition process shall issue to all persons interested in . . . the trust of which the accounting party is trustee." SCPA 2210 (10) reflects the rule, derived from *Fisher v Banta* (66 NY 468 [1876]), that those who have a beneficial interest in a trust or estate "ought not to be concluded by a proceeding instituted by [the trustee or executor] against himself" (*Fisher v Banta, supra* at 482; *see also United States Trust Co. of N.Y. v Bingham,* 301 NY 1 [1950]; *Matter of Buck, supra; Matter of Massimino, supra*). SCPA 2210 (10) essentially codifies the holding of *Fisher,* recognizes the rule that "an accounting fiduciary [may account] to himself in a separate capacity," and requires that, in any such accounting proceeding, "process shall issue to all persons interested" so as to ensure that the ensuing decree will be conclusive. Under the approach

adopted by the Surrogate and by our colleague in the dissent, the 1977 decree and the 1981 decree have no more preclusive effect with respect to the objectant than they would have had if the terms of SCPA 2210 (10) did not exist and if, in accordance with the general rule, the objectant had thus not been cited in connection with the proceedings that culminated in those decrees.

The Surrogate relied upon sections 177 and 223 (2) of the Restatement (Second) of Trusts. The former provision states, "[T]he trustee is under a duty to the beneficiary to take reasonable steps to realize on claims which he holds in trust." The latter provision defines circumstances under which a trustee may be liable to the beneficiary for a breach of trust based on his or her failure to redress a breach of trust committed by a predecessor trustee. Neither provision addresses the issue presented in this case: whether the beneficiary of the Eighth (B) Trust is bound by prior decrees discharging the executor of a decedent's estate, and discharging the trustee of the Eighth (A) Trust, where such beneficiary had a fair opportunity, prior to the entry of those decrees, to raise the same issues that she now seeks to litigate in the context of an accounting proceeding relating to the Eighth (B) Trust. Contrary to the statements made by our colleague in the dissent, our holding in no way relieves a trustee of its duty to act in good faith; we assert only that a person who has been aggrieved by any breach of this duty may not raise such a claim in a subsequent proceeding, after having already had a full and fair opportunity to litigate it in a prior proceeding.

The conclusion of the Surrogate in this case, like that of the cases from other jurisdictions that could be cited in support (*e.g. Pepper v Zions First Natl. Bank, N.A.,* 801 P2d 144 [Utah 1990]; *Matter of Kemske,* 305 NW2d 755 [Minn 1981]; *contra Carr v Bank of Am. Natl. Trust & Sav. Assn.,* 11 Cal 2d 366, 79 P2d 1096 [1938]), is based on application of the rule set forth in Restatement (Second) of Judgments § 36 (2). This rule states that "[a] party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity." (*Id.*)

We may assume, for the sake of argument, that this rule accurately reflects the general common-law rule as it stands in this state, and that, in the absence of any statute providing otherwise, this rule would prevent the petitioner, in its capacity

as trustee of the Eighth (B) Trust, from enjoying "the benefits of the rules of res judicata" (Restatement [Second] of Judgments § 36 [2]) based on the 1977 and 1981 decrees that were obtained by it (or its predecessor) in different capacities as executor and as trustee of the Eighth (A) Trust. The fact remains that, as noted above, New York has a statute, SCPA 2210 (10), the clear intent of which is to provide that fiduciaries who, in one capacity, are accounting to themselves in another capacity, may obtain valid and conclusive judgments that will bind all those interested persons who have been duly cited and who have appeared. In other words, assuming that the rule of the Restatement (Second) of Judgments quoted above is valid as a general matter in this state, its operation in the context of fiduciaries who properly account to themselves pursuant to SCPA 2210 (10) has been preempted by the terms of that statute.

Many of the foreign cases cited by the Surrogate are distinguishable in that they do not involve statutes that are analogous to SCPA 2210 (10). In *Matter of Kemske* (305 NW2d 755 [Minn 1981], *supra*), for example, a Minnesota statute (Minn Stat former § 525.481) apparently authorized the very thing that SCPA 2210 (10) prohibits, that is, a decree finally approving the account of an executor who has accounted to himself only, and the objectants claimed that they had "never received notice of the hearing on the final account" (*Matter of Kemske, supra* at 762). Here, by way of contrast, the objectant had notice of the proceedings that led to the 1977 and the 1981 decrees.

The foreign cases relied upon by the Surrogate are also distinguishable on a variety of other grounds. In *Pepper v Zions First Natl. Bank, N.A.* (801 P2d 144 [Utah 1990], *supra*), for example, the objectants failed to appear in the original probate hearing, and had later sought to vacate the determination made after that hearing on the basis of excusable neglect, only to have their motion denied based on its untimeliness. The court in *Pepper* found there was an issue of fact as to whether "the plaintiffs . . . were in fact prevented by fraud or misrepresentation from litigating [their] allegations of mismanagement and self-dealing" (*id.* at 151). Here, there is no indication that any fraud on the part of the petitioner prevented the objectant from raising any issues during the proceedings that culminated in the 1977 and 1981 decrees.

The holding of the Surrogate in this case may not be upheld on the theory that the claims that the objectant now seeks to

advance are any different from those that she could have advanced before, or on the theory that the prior proceedings did not afford her the opportunity to advance her current claims. This argument, seemingly adopted by our colleague in the dissent, is based in large part upon acceptance of the premise that there is a distinction of substance between (a) a claim that the petitioner, or its predecessor, is answerable to the objectant based on its mismanagement of the decedent's estate and based on its mismanagement of the Eighth (A) Trust, and (b) a claim that the petitioner, or its predecessor, is answerable to the objectant based on its failure, in its capacity as trustee of the Eighth (B) Trust, to object to its *own* mismanagement of the decedent's estate or to its *own* mismanagement of the Eighth (A) Trust. Whatever semantic difference there might be between the two formulations noted above, it is beyond dispute that, under either formulation, the wrongful conduct sought to be redressed relates to the petitioner's, or to its predecessor's, alleged mismanagement of the decedent's estate, and of the Eighth (A) Trust. The dissent acknowledges that the objectant may not pursue her claim under the former formulation, because that claim is precluded under principles of res judicata, *but that she may do so under the latter one.* If we could find in the dissent any explanation as to why the difference between these two formulations is anything more than purely semantic, we would have no hesitation in concurring and voting to affirm.

The elaborate periphrases to which the objectant was forced to resort in drafting her objections illustrate the specious nature of her argument to the effect that her current claims are in fact different from those that, as she acknowledges, could have been pursued earlier. For example, the objectant asserts that "the Bank [as trustee of the Eighth (B) Trust] . . . failed to require itself upon its appointment as executor of the estate of Blanche Hunter to divest itself of the concentration of Eastman Kodak stock." This is no different from making an assertion to the effect that the bank failed upon its appointment as executor of the estate of Blanche Hunter to divest itself of the concentration of Kodak stock. The dissent appears to acknowledge that the objectant is barred by the doctrine of res judicata from pursuing an objection couched in the latter terms. Why, then, the same objection, when couched in the substantially identical albeit more roundabout former terms, may be pursued, in apparent violation of the doctrine of res judicata, has not been adequately explained.

The petitioner states, on appeal, that the objectant's "arguing that [the petitioner], as Trustee, had a duty to compel itself as Executor to diversify the portfolio in 1973 is precisely the same as [her] arguing that Chase, as Executor, had a similar obligation." As outlined above, this statement is undoubtedly correct; the difference between the two propositions is semantic only. We most respectfully submit that it is an undue focus on form, as opposed to substance, that has led the dissent to conclude that the objectant herein should be permitted to advance, by way of much laborious circumlocution, the very same claims that she is admittedly precluded from advancing by way of plain and direct English.

The opinion of the Surrogate reflects an extension of the rule announced in *Fisher v Banta* (66 NY 468 [1876], *supra*), according to which those who have a beneficial interest in a trust or estate "ought not to be concluded by a proceeding instituted by [the trustee or executor] against himself" (*id.* at 482). That rule might properly be applicable where, as in *Fisher*, the persons interested had no formal notice of the prior proceeding in question. Approval of the viewpoint expressed by the Surrogate would represent an extension of this rule even to those cases where the persons interested not only had notice of the prior proceeding, but actually participated in it. What this means, in the final analysis, is that fiduciaries who serve in multiple capacities will never have the ability to obtain judgments that have fully preclusive effect. Adoption of such a rule would certainly discourage persons or institutions from functioning in multiple fiduciary capacities, albeit specifically chosen by the testator for their qualifications and expertise.

It is well-settled that the testator "enjoys the right to determine who is most suitable among those legally qualified to settle his affairs and execute his will" (*Matter of Leland,* 219 NY 387, 393 [1916]) and a potential conflict of interest does not warrant the replacement of the fiduciary (*see Matter of Shaw,* 186 AD2d 809 [1992]; *Matter of Marsh,* 179 AD2d 578 [1992]). The rule proposed by the dissent would force the replacement of a fiduciary whenever a fiduciary accounted to itself in a separate capacity, in derogation of these well-settled principles of law.

Under settled New York law, a fiduciary who desires the protection of a decree discharging it from future liability may voluntarily petition the court to approve its final account. A fiduciary who petitions the Surrogate's Court for a final judicial

settlement of its account, who properly serves citations on all interested parties as defined in the governing statutes, who otherwise follows the procedure prescribed by law, and who obtains a decree finally settling its account is fully entitled to the protection referred to above. To affirm the order insofar as appealed from in this case would go a long way toward depriving fiduciaries in this state of this protection, particularly where, as is often the case, a single person or entity is serving as a fiduciary in various capacities, in accordance with the clear intent of the testator.

We note, in conclusion, that nothing in our decision prevents the objectant from contesting the petitioner's management of the Eighth (B) Trust. The objections to the management of the assets in the Eighth (B) Trust were properly raised, since there was no prior decree judicially settling an intermediate account with respect to that trust. The decree settling the account with regard to the Eighth (A) Trust is not binding with respect to the management of assets in the Eighth (B) Trust, even if the petitioner followed the same plan and engaged in the same conduct with respect to both trusts. The propriety of the management of the assets of the Eighth (A) Trust and the management of assets of the Eighth (B) Trust involve separate and distinct issues: what was proper for the Eighth (A) Trust for the benefit of Alice F. Creighton was not necessarily proper for the Eighth (B) Trust for the benefit of the objectant (*see Meredith v First Trust Co. of Albany,* 260 App Div 517 [1940]).

In sum, objections to the failure of the petitioner's predecessor-in-interest to contest its own voluntary accountings as executor of Hunter's estate and as trustee of the Eighth (A) Trust should have been dismissed.

For the foregoing reasons, the order under review should be modified, on the law, by deleting the provisions thereof denying those branches of the petitioner's motion which were to dismiss objection 4, so much of objection 5 as charged the petitioner's predecessor-in-interest with failing to inform and advise the objectant of the risk of maintaining a concentration of Kodak stock in the estate, objection 8 (a) through (f), and so much of objection 8 (g) as charged the petitioner's predecessor-in-interest with failing "to undertake a formal analysis and establish an investment plan for the Article Eighth A" trust, and objection 9 and substituting therefor provisions granting those branches of the motion. As so modified, the order should be affirmed insofar as appealed from.

CRANE, J. (concurring in part and dissenting in part). This is a contested proceeding commenced by the petitioner Chase Manhattan Bank as cotrustee of a testamentary trust created under paragraph Eighth (B) of the will of the decedent Blanche D. Hunter for the benefit of her granddaughter, the now-deceased objectant Pamela Townley Creighton,[1] to settle its first intermediate account as to that trust.

Blanche D. Hunter died testate in December 1972 with a gross estate valued in excess of $30 million. Under articles Eighth (A) and (B) of her will, she had established two equal residuary trusts for the benefit of each of two granddaughters, Alice F. Creighton and Pamela Townley Creighton (hereinafter the Eighth [A] Trust and the Eighth [B] Trust, respectively). The trusts were each to be funded with one half of the decedent's residuary estate, and provided for periodic payments of income for life, with the remainder to be disposed of pursuant to a power of appointment. Each trust also provided that, in the event either granddaughter, upon her death, failed to exercise the power of appointment or had no issue, the balance of the first deceased granddaughter's trust was to be transferred to the surviving granddaughter.

Blanche D. Hunter's will was admitted to probate in January 1973. Lincoln Rochester Trust Company, the predecessor by various mergers and consolidations to Chase Manhattan Bank (hereinafter collectively referred to as Chase), and James W. Cook were appointed coexecutors of the estate and cotrustees of the trusts. The coexecutors filed their estate account in March 1976. Because the coexecutors were also cotrustees of the Eighth (A) and (B) Trusts, they served citations in the estate accounting proceeding pursuant to SCPA 2210 (10) upon, among others, Alice F. Creighton and the objectant. The objectant appeared, through counsel, in the estate accounting proceeding and filed a single objection to the amount of the coexecutors' attorney's fees. That objection was resolved by the parties, and the estate account was approved by decree dated June 1, 1977 (hereinafter the 1977 decree).

Alice F. Creighton died on March 11, 1980. Because she had no issue at the time of her death and had not exercised her power of appointment, the assets of the Eighth (A) Trust poured over into the objectant's Eighth (B) Trust. In July 1981 Chase

---

1. As the majority has noted, Pamela Townley Creighton died on December 3, 2002, but for the sake of clarity, this opinion will refer to her as the objectant.

and Cook, as cotrustees of the Eighth (A) Trust, filed their account for that trust. Because the cotrustees were once again accounting to themselves in that proceeding as cotrustees of the Eighth (B) Trust, they served a citation pursuant to SCPA 2210 (10) upon, among others, the objectant. The objectant executed a waiver and consent to the accounting. On December 10, 1981, the court issued a decree (hereinafter the 1981 decree) settling the account of Chase and Cook as cotrustees of the Eighth (A) Trust.

Chase and Cook continued to serve as cotrustees of the Eighth (B) Trust until Cook's death in August 1996. On November 25, 1997, Chase filed its intermediate account of the Eighth (B) Trust that is the subject of this proceeding. Chase originally obtained a waiver and consent from the objectant with respect to the underlying account, and the Surrogate's Court issued a decree in 1998 (hereinafter the 1998 decree) judicially settling Chase's account as the surviving cotrustee of the Eighth (B) Trust. The objectant subsequently moved to vacate the 1998 decree and to withdraw her waiver and consent on the ground that it had been improperly obtained. After a hearing, the Surrogate's Court vacated the waiver and consent on the ground that Chase failed to show that the objectant's execution of it was properly obtained, and the court thereupon vacated the 1998 decree (see Matter of Hunter, 190 Misc 2d 593 [2002]).

The objectant thereafter filed her objections to the Eighth (B) Trust account based, inter alia, upon Chase's failure to diversify the assets in the trust which consisted almost exclusively of Eastman Kodak Company (hereinafter Kodak) stock that had precipitously declined in value. The objectant sought to surcharge Chase for breaching its fiduciary duties in this, as well as several other respects, including its failure to object, in its capacity as cotrustee of the Eighth (B) Trust, to the prior account proceedings for the estate and the Eighth (A) Trust. Chase sought to dismiss objections 4, 5, 6, 8, 9, 12, and 13 as barred by the doctrine of res judicata. It argued that the 1977 decree and the 1981 decree conclusively resolved all matters relating to its administration of Blanche D. Hunter's estate, its funding of the trusts, and its retention of the Kodak shares as coexecutor and cotrustee of the Eighth (A) Trust. Chase argued that, since the objectant appeared in both previous accountings and failed to raise any of the allegations set forth in the objections at issue here, she is precluded from doing so in the instant proceeding.

The Surrogate's Court, inter alia, denied those branches of Chase's motion which were to dismiss, pursuant to CPLR 3211,

or in the alternative, pursuant to CPLR 3212, objections 4, 5, 8, and 9, and certain provisions of objections 6, 12, and 13, to the account. The Surrogate's Court dismissed the objections to the extent the objectant sought to surcharge Chase as the coexecutor of the estate or cotrustee of the Eighth (A) Trust for any improprieties allegedly committed in those capacities. The Surrogate's Court found that Chase failed to prove that the doctrine of res judicata barred the objections to Chase's actions as cotrustee of the Eighth (B) Trust, since those actions were not subject to judicial scrutiny in the prior accounting proceedings. Furthermore, noting that a fiduciary serving in multicapacities owes a special duty to its beneficiaries, the Surrogate's Court held that SCPA 2210 (10) did not exonerate a fiduciary for failing to scrutinize its actions as the accounting fiduciary simply by issuing process to, inter alia, the objectant in the prior proceedings. The court stated that such an interpretation of the statute was better left for possible legislative action.

The question presented on this appeal is whether the Surrogate's Court erred in holding that neither SCPA 2210 (10) nor the doctrine of res judicata bars the objectant's claims against Chase for its failure to object, in its capacity as the Eighth (B) trustee, to its own 1977 and 1981 accountings filed in its other fiduciary capacities. I would hold that the Surrogate's Court properly denied those branches of the motion which were to dismiss the objections at issue.

The doctrine of res judicata is based on the premise that, once a person has been afforded a full and fair opportunity to litigate a particular issue, he or she may not be permitted to do so again. As defined in treatises and case law, the doctrine stands for the proposition that an existing, final judgment, rendered upon the merits by a court of competent jurisdiction is conclusive upon the parties and those in privity with them, in any subsequent action, as to the issues of fact and questions of law necessarily decided therein (*see* 8B Carmody-Wait 2d § 63:442; *Gramatan Home Inv. Corp. v Lopez,* 46 NY2d 481, 485 [1979]).[2] The decree of a Surrogate's Court judicially settling the account of an executor or testamentary trustee can be res judicata only as to "mat-

---

2. The related doctrine of collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue of ultimate fact raised in a prior action or proceeding and decided against that party or those in privity (*see Buechel v Bain,* 97 NY2d 295, 303 [2001]; *D'Arata v New York Cent. Mut. Fire Ins. Co.,* 76 NY2d 659, 664 [1990]). Collateral estoppel is a flexible doctrine grounded in the facts and realities of a particular litigation which should not be rigidly or mechanically applied since it is, at its core, an equitable doc-

*(n. cont'd)*

ters embraced in the account and decree" (*Matter of Williams,* 1 AD2d 1022, 1023 [1956]; *see Matter of Schaefer,* 18 NY2d 314, 318 [1966]; *Matter of Rudin,* 292 AD2d 283 [2002]; *Matter of Seaman,* 275 App Div 484, 490 [1949], *affd* 300 NY 756 [1950]; *Matter of Grace,* 62 Misc 2d 51, 55 [1970], *affd* 35 AD2d 783 [1970]; *Matter of Jones,* 13 Misc 2d 678, 681 [1958], *affd* 8 AD2d 829 [1959]; 7 Warren's Heaton, Surrogates' Courts § 102.03, at 102-134–102-138 [6th ed rev]). " 'Matters embraced in a decree and in the account . . . include only those matters which are clearly and specifically set out and which can be definitely ascertained from a reading of the account and decree' " (*Matter of Williams, supra* at 1023, quoting *Matter of Seaman, supra* at 490).

Chase argues that the objectant was properly made a party to the 1977 estate accounting proceeding and the 1981 Eighth (A) Trust accounting proceeding pursuant to SCPA 2210 (10). Since Chase served in a multiple fiduciary capacity, i.e., as the coexecutor of the estate and as a cotrustee of the Eighth (A) and (B) Trusts, it was accounting to itself in separate capacities in both the estate and the Eighth (A) Trust accounting proceedings. Chase claims that it could not represent the interests of the objectant in its capacity as the cotrustee of the Eighth (B) Trust in either of those proceedings. It was the duty of the objectant Pamela T. Creighton, Chase continues, to protect her own interests as beneficiary of the Eighth (B) Trust by filing in the estate and Eighth (A) Trust accountings objections to Chase's actions since Chase became her adversary in those proceedings. Because she did not file any objections to the accountings in those proceedings, Chase argues that she is now barred from filing objections to the Eighth (B) Trust accounting. The acts of which she now complains, inter alia, the retention of Kodak stock and the delay in taking possession of the trust corpus, Chase contends, were disclosed as part of, and thus necessarily embraced in, those earlier accountings.

Thus, Chase claims, and the majority so holds, that all of the objections the objectant seeks to raise in this proceeding could and should have been raised in those prior proceedings, and

---

trine reflecting general concepts of fairness (*see Buechel v Bain, supra; D'Arata v New York Cent. Mut. Fire Ins. Co., supra* at 668).

The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present proceeding and the prior determination (*see Kaufman v Eli Lilly & Co.,* 65 NY2d 449, 455-456 [1985]; *Laing v Cantor,* 1 AD3d 406 [2003]).

therefore, that the objectant is barred from interposing these objections in this proceeding.

The objectant argues that all of the claims she seeks to raise against Chase are directed at its breaches of duty as the Eighth (B) trustee, and that these objections could not have been raised in the estate or Eighth (A) Trust accounting proceedings. For example, the objectant asserts that Chase breached its duty in 1973 as the Eighth (B) trustee to take possession of and diversify the Eighth (B) Trust assets, and that Chase breached its duty as the Eighth (B) trustee in failing to protect the interests of the Eighth (B) Trust beneficiaries in the 1977 estate accounting and the 1981 Eighth (A) Trust accounting. I conclude that the law, the facts, and the equities all favor the objectant's position.

"Executors and trustees are charged as fiduciaries with one of the highest duties of care and loyalty known in the law" (*Pepper v Zions First Natl. Bank, N.A.,* 801 P2d 144, 151 [Utah 1990]). It is not generally necessary to cite a trust beneficiary in an accounting proceeding if the accounting executor and the trustee are different persons, on the assumption that the interests of the beneficiaries are sufficiently protected by citing the trustee (*see* SCPA 2210 [7]; *Matter of Parkinson,* 134 Misc 2d 565, 565-566 [1987]). The trustee actually represents the person interested in the trust and remains accountable to her on the trustee's accounting if there is a failure to protect her interests (*see Matter of Ziegler,* 157 Misc 2d 423, 427 [1993]).

Where the executor and the trustee are one and the same, however, the SCPA prohibits an accounting fiduciary from accounting to itself in a separate capacity, unless there is at least one other trustee who is not also a coexecutor, on the theory that an individual may not discharge himself from liability (*see Matter of Parkinson, supra* at 566; *see also Fisher v Banta,* 66 NY 468, 481 [1876]; *Matter of Haigh,* 125 Misc 365, 366-367 [1925], *affd* 219 App Div 816 [1927]). Where, as here, the executor and trustee are the same and there is no trustee who is not also a coexecutor, the SCPA provides that, in addition to the accounting party appearing in its separate capacity, it must issue process to all persons interested in the estate or trust (*see* SCPA 2210 [10]).[3] Subdivision (10) was added in 1927 (Surrogate's Court Act § 262, as amended by L 1927, ch 632), "to prevent an executor from taking advantage of [its] dual relationship to

---

**3.** SCPA 2210 (10) provides, in pertinent part:
   "Upon a voluntary judicial settlement of the account of a fiduciary process must issue to: . . .

*(n. cont'd)*

evade [its] liability as executor in a transaction with [itself] as trustee, and to permit interested persons to make timely objections to [its] executorial acts" (*Matter of Massimino,* 143 Misc 119, 121 [1932]; *see Fisher v Banta, supra; Matter of Haigh, supra*), as well as "to avoid the appearance of self dealing by a fiduciary" (6 Warren's Heaton, Surrogates' Courts § 96.06 [1], at 96-41 [6th ed rev]).

I find that both Chase and the majority misinterpret the objections raised in this proceeding. It is this misinterpretation which I believe leads to this Court's holding with which I disagree, that the surviving objections are barred. In the estate accounting proceeding, the dereliction of the coexecutors in retaining the Kodak stock as it declined in value could have been raised by any of the beneficiaries cited in that proceeding. This included the objectant herein. However, one of the issues in this Eighth (B) Trust accounting is the failure of Chase, in its separate capacity as the Eighth (B) trustee, to object to the coexecutors' acts of keeping the estate invested in the Kodak stock as it precipitously declined in value. This is a separate and distinct issue, like the others raised by the objectant, addressed to Chase's alleged failures to act *in its capacity as cotrustee of the Eighth (B) Trust,* which could not have been raised, and thus was not embraced in, the earlier accountings.

In my view, there also is no merit to Chase's assertion that it was relieved of its separate fiduciary duty to the objectant, Pamela Townley Creighton, as cotrustee of the Eighth (B) Trust by serving her with a citation in its accounting proceedings for the estate and Eighth (A) Trust. If this were accurate, there would be no purpose to the language in SCPA 2210 (10) which requires the accounting fiduciary, when accounting to itself in a separate capacity, to appear in that proceeding in its separate capacity *and,* "in addition," to issue process to all interested parties. The drafters of SCPA 2210 (10) could simply have required the interested parties to be served and done away with any appear-

---

"10. Where an accounting fiduciary accounts to himself in a separate capacity as the fiduciary of a deceased beneficiary of the estate, or as trustee . . . it shall not be sufficient to issue process to or obtain the appearance of the accounting party in such separate capacity only, but in addition process shall issue to all persons interested in the estate of the deceased beneficiary . . . or the trust of which the accounting party is trustee. The provisions of this subdivision shall not apply where the accounting fiduciary has in said separate capacity one or more co-fiduciaries who are not his co-fiduciaries in his accounting capacity."

ance by the fiduciary in its separate capacity, if Chase's argument were valid (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 231 ["(I)t is a general rule that every part of an act is to receive some consideration in determining its meaning, and that if possible meaning and effect be given to all its provisions and language"]). According to Chase, its appearance in its separate capacity means absolutely nothing because it is there only to receive the accounting and stand mute, and not to protect its beneficiaries. Yet, neither Chase nor the majority acknowledges the fact that Chase was entitled to collect commissions in its separate capacities (*see* SCPA 2307, 2309, 2312), at the same time that Chase claims it was authorized by virtue of SCPA 2210 (10) to abandon certain of its fiduciary obligations.

By adopting Chase's interpretation of the intent of SCPA 2210 (10), the majority is relieving it and all other multicapacity fiduciaries of their duties as trustees to act with good faith, prudence, and undivided loyalty in the administration of a trust (*see generally Meinhard v Salmon,* 249 NY 458, 464 [1928]; *Matter of Parkinson, supra; Matter of Menzie,* 54 Misc 188, 193 [1907]), merely because they served in more than one capacity. I cannot join in a conclusion that serves to relieve Chase of the separate fiduciary obligation it owed to the objectant as the Eighth (B) trustee (*see* Restatement [Second] of Judgments § 36; Restatement [Second] of Trusts § 177; *Matter of Parkinson, supra; Matter of Menzie, supra; see also Pepper v Zions First Natl. Bank, N.A., supra*). Chase's and the majority's interpretation of SCPA 2210 (10) would inhibit rather than advance the precise purpose of that provision, that is, to prevent the fiduciary from taking advantage of its dual capacity. To enhance that objective, the objectant should not be foreclosed from challenging the second part of that dual capacity on the accounting in her own trust. It is this failure to fulfill its duties as trustee of the Eighth (B) Trust to which Pamela Townley Creighton's objections are now directed, i.e. Chase's failure to object to its own actions as executor or trustee of the Eighth (A) Trust. To conclude, as the majority does, that under the circumstances of this case the objectant should be estopped from complaining of Chase's fiduciary failures as the Eighth (B) trustee in its accounting proceedings for the estate and Eighth (A) Trust is inequitable.

"A trustee's duty is not diminished or altered because the trustee was also the executor of the estate that transferred its assets to the trust, even though the executor is absolved from li-

ability for [its] administration of the estate by a court order" (*Pepper v Zions First Natl. Bank, N.A., supra* at 152; *see In re First Natl. Bank of Mansfield,* 37 Ohio St 2d 60, 66, 307 NE2d 23, 26-27 [1974]; *Dickerson v Camden Trust Co.,* 1 NJ 459, 64 A2d 214 [1949]). I would hold that "[a]lthough [Chase] acted as both executor and trustee, the duties of each office remained separate and independent from the other and did not merge. Thus, [Chase] as [the Eighth (B) Trust] trustee had a duty to act with the utmost fidelity to protect and preserve the [objectant's] interests, even though [Chase] had to challenge its own conduct as executor [and as Eighth (A) Trust trustee]" (*Pepper v Zions First Natl. Bank, N.A., supra* at 151; *cf. Matter of Massimino, supra* at 121). My conclusion derives from the principle that a party appearing in an action in one capacity is not entitled to the benefits of res judicata in a subsequent action where it appears in a different capacity (*see Pepper v Zions First Natl. Bank, N.A., supra* at 152-153; Restatement [Second] of Judgments § 36 [2]; *see also Continental Ins. Co. v Colangione,* 94 AD2d 916, 918-919 [1983]; *Julien J. Studley, Inc. v Lefrak,* 66 AD2d 208, 217 [1979], *affd* 48 NY2d 954 [1979]; *Weiner v Greyhound Bus Lines,* 55 AD2d 189, 191-192 [1976]).

My analysis of the effect of res judicata on the dual capacity appearance of a fiduciary finds support in the SCPA itself. SCPA 1505 (1) provides that where the same person is a testamentary trustee and also the executor of the will upon the same estate, proceedings taken by the person as trustee do not affect him, her, or it as executor, except in one of the instances enumerated in the statute. None of these instances pertains here. The practice commentaries to this provision explain "[w]hen the same person serves as testamentary trustee and also the executor . . . of the estate, most proceedings treat him as completely separate in the two capacities, and an action which affects him in one capacity does not affect him in the other capacity" (Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 58A, SCPA 1505). There is no provision in the SCPA for treating a fiduciary as one entity in the two capacities when judicially settling its account as executor or trustee. Accordingly, I would hold that, under the circumstances presented here, the beneficiary of the Eighth (B) Trust is not precluded by the decrees discharging Chase as the executor and as the trustee of the Eighth (A) Trust from asserting claims against it for its failure to object as the trustee of the Eighth (B) Trust, even though the trustee and the executor were the same entity (*see*

*Pepper v Zions First Natl. Bank, N.A., supra* at 152, citing *Matter of Winston's Estate,* 99 Ill App 3d 278, 287, 425 NE2d 973, 980-981 [1981]; *Bullis v DuPage Trust Co.,* 72 Ill App 3d 927, 391 NE2d 227 [1979]; *Liska v First Natl. Bank in Sioux City,* 310 NW2d 531 [Iowa 1981]; *Matter of Kemske,* 305 NW2d 755, 762 [Minn 1981]; *In re First Natl. Bank of Mansfield, supra; Smith v McMahon,* 236 Or 310, 388 P2d 280 [1964]).

The dictum relied upon in the cases cited by Chase is unpersuasive. These cases all state the general proposition that, where a fiduciary acting in its representative capacity accounts to itself in another representative capacity, interested persons as beneficiaries will not be bound by the decree unless they are cited in that proceeding (*see e.g. Matter of Massimino, supra* at 121). However, I do not think SCPA 2210 (10) should be interpreted as a means of binding the beneficiaries, but rather, it should be seen as providing an opportunity for the beneficiaries to object to the particular accounting at issue in that proceeding. Nevertheless, there is nothing in SCPA 2210 (10) or the case law that precludes a beneficiary from objecting, at a later opportunity, to the failure of a fiduciary to act in its separate capacity to protect the beneficiary in those prior proceedings.[4]

In neither *Matter of Massimino (supra)* nor *In re Campbell's Will* (38 NYS2d 827, 831 [1942], *affd* 267 App Div 783 [1943]) did the objectant seek to surcharge the trustee for failing to object, in its capacity as trustee, to the accounting it filed in its capacity as executor. *Massimino* does not stand for the proposition that Chase can take advantage of its multifiduciary capacity to preclude a beneficiary from objecting to its actions as the trustee of the Eighth (B) Trust which have never before been the subject of any court proceeding to which the beneficiary of the Eighth (B) Trust as such could have filed objections. Thus, in my opinion the objections

4. The prior accountings did not bind the objectant as the beneficiary of the Eighth (B) Trust, but only as a party interested directly in the estate and Eighth (A) Trust accounting proceedings (*see Matter of Kemske, supra*). In other words, while the objectant could have raised objections in the estate accounting proceeding to Chase's actions as the executor, and in the Eighth (A) Trust accounting proceeding to the actions of Chase as the Eighth (A) trustee, her claims against her own fiduciary as Eighth (B) trustee for its repose in the estate and Eighth (A) Trust accounting proceedings could not have been raised in either of those prior accountings. In fact, the objections to the Eighth (B) trustee's actions could not have been raised before 1997 when Chase sought to settle the Eighth (B) Trust account.

raised in the proceeding at bar pertaining to the alleged failure of the trustee of the Eighth (B) Trust to object in the estate and Eighth (A) Trust accounting proceedings are not foreclosed by the ruling in *Massimino*. That case held only that the person in the position of the Eighth (B) Trust beneficiary is entitled to be heard on her direct objections in the estate accounting. The remainder of the decision in *Massimino* is dictum. Similarly, the holding in *In re Campbell's Will (supra)* does not estop the objectant from filing objections to the Eighth (B) trustee's independent derelictions of its duties in the prior accountings.

The only case cited by Chase which may support its position is *Matter of Chaves* (143 Misc 868 [1932], *affd without op* 239 App Div 900 [1933]), in which the same individual served as the administratrix and, when a will was located, as the executrix of the estate of Jose Chaves. The objectant appeared at the accounting of the administratrix and consented to the entry of a decree settling her account (*Matter of Chaves, supra* at 870). She made no objection to the account or to the retention of certain securities (*id.*). On the executrix's accounting, the Surrogate's Court held that the decree discharging the administratrix was conclusive on the issue of the retention of the securities (*id.*). Therefore, the objectant was barred from asserting any liability against the executrix for the retention of the securities based upon her failure to object in the prior proceeding (*id.*). Again, however, the objectant in the case at bar is not attacking the acts of Chase as the executor or the trustee of the Eighth (A) Trust, but only its acts or failure to act as the trustee of the Eighth (B) Trust. Furthermore, *Chaves* is distinguishable because the fiduciary of the same estate succeeded herself, whereas Chase is serving as a fiduciary over different entities—an estate and two trusts—with different legatees, beneficiaries, and parties in interest. In any event, *Chaves* is not binding on this Court (*see Mountain View Coach Lines v Storms*, 102 AD2d 663, 665 [1984]).

What divides the majority and dissent in this case is the treatment of those objections the Surrogate's Court refused to summarily dismiss. The majority equates these with the ones the Surrogate did dismiss because there is nothing more than a semantic difference between them. Based on this equivalence, the majority applies the doctrine of res judicata to summarily dismiss the objections the Surrogate allowed to survive.

We all agree, the Surrogate included, that Pamela Townley Creighton's direct assault on the estate and Eighth (A) Trust

accountings are, indeed, barred by res judicata. This is because the issue, in one instance whether the executor acted prudently in retaining Kodak stock in the estate and, in the other, whether the Eighth (A) trustee acted properly in receiving and retaining the Kodak stock in that trust, has been fully and fairly concluded by the prior decrees settling those accounts. While hewing to the notion that Pamela Townley Creighton's objections to the failure of her own trustee of the Eighth (B) Trust to object in those prior proceedings is a semantic attempt to open up those long-ago concluded accountings, the majority, by permitting, inter alia, the survival of objections after the latest decree, the 1981 decree, is tacitly acknowledging that the issues are not the same.

In more than just semantics, the issues are, indeed, different (*see Lipkind v Ward,* 256 App Div 74, 78-79 [1939]; *cf. Palmer v Hussey,* 87 NY 303, 306-307 [1882], *affd* 119 US 96 [1886]). If Pamela Creighton's trustee of the Eighth (B) Trust had been a separate person or entity other than Chase, there is no question that she could hold that trustee responsible for failing to object in the accounting proceedings for the estate and Eighth (A) Trust, whether or not she had appeared in those proceedings (*see* SCPA 1506 [4]; 2210 [7]; Restatement [Second] of Trusts § 177; *Matter of Parkinson, supra; Matter of Ziegler, supra; Matter of Brunner,* 49 Misc 2d 139, 140 [1966], *affd* 26 AD2d 838 [1966]; Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 58A, SCPA 1506).

The majority, however, alters the situation in the case of a multicapacity fiduciary such as Chase. In effect, the majority concludes that SCPA 2210 (10) and the will of Blanche D. Hunter appointing Chase immunize it for all future capacities from imprudent investing in its role as fiduciary for the estate. Nothing in the history or language of SCPA 2210 (10) or in the will sponsors such a result. I agree with the reluctance of the Surrogate to construe SCPA 2210 (10) as providing such protection and agree that the issue be left for action by the Legislature. To do the contrary is to read into a statute that is in derogation of the common law (*see* majority at 125; McKinney's Cons Laws of NY, Book 1, Statutes § 301 [b] ["The common law is never abrogated by implication, but on the contrary it must be held no further changed than the clear import of the language used in a statute absolutely requires"]), a provision that is absent and that undermines the intent of that section: to stop a fiduciary from taking advantage of its dual or multiple relationship

to evade its responsibility to its beneficiary (*see Matter of Massimino, supra*).

In my interpretation of the law applicable to the objections that are, in fact, before us on this appeal, I emphatically do not negate the doctrine of res judicata and I accord to SCPA 2210 (10) an effect no broader than to bar Pamela Townley Creighton's objections to Chase's actions as coexecutor and trustee of the Eighth (A) Trust, not of the Eighth (B) Trust. Likewise, I am not saying that Chase is not released "as such Executor[ ] as to all matters embraced in its Account and this decree." I am saying the present objections are not barred by that provision because Chase was not thereby released as trustee of the Eighth (B) Trust (*see Pepper v Zions First Natl. Bank, N.A., supra*, at 152-153), and these objections do not raise matters embraced in the estate account and decree.

The effect of my position is not to put a multicapacity fiduciary literally in the position of objecting to its own account. Rather, the effect is to encourage fiduciaries to be vigilant, prudent, and faithful to their fiduciary duties. This accords with well-recognized public policy. I simply do not believe that this Court should lend its weight and prestige to immunize a fiduciary from breach of its obligations to a trust beneficiary merely because the testatrix appointed it in multiple capacities and it has been discharged in one or more of these prior capacities.

In conclusion and simply put, the objectant challenges the Eighth (B) trustee's actions which, I would hold, were not embraced by the prior accountings and could not have been addressed in the prior proceedings (*see Matter of Connors*, 36 Misc 2d 866, 867 [1962]; *Pepper v Zions First Natl. Bank, N.A., supra; cf. In re Campbell's Will, supra; Matter of Chaves, supra; Matter of Massimino, supra*). Thus, the Surrogate's Court acted properly, and I would affirm its order insofar as appealed from.

ALTMAN and GOLDSTEIN, JJ., concur with PRUDENTI, P.J.; CRANE, J., concurs in part and dissents in part in a separate opinion.

Ordered that the order is modified, on the law, by deleting the provisions thereof denying those branches of the petitioner's motion which were to dismiss objection 4, so much of objection 5 as charged the petitioner's predecessor-in-interest with failing to inform and advise the objectant of the risk of maintaining a concentration of Eastman Kodak Company stock in the estate, objection 8 (a) through (f), and so much of objection 8 (g) as charged the petitioner's predecessor-in-interest with failing "to

undertake a formal analysis and establish an investment plan for the Article Eighth A'' trust, and objection 9, and substituting therefor provisions granting those branches of the motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.